UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK ANTHONY ROBICHAUX                    CIVIL ACTION

VERSUS                                    NO. 17-5680

LAFOURCHE PARISH                          SECTION "A"(2)
DETENTION CENTER ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Mark Anthony Robichaux, is a former prisoner who was recently released from the Catahoula Correctional Center ("Catahoula") in Harrisonburg, Louisiana and now lives in Raceland, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. He alleges that defendant Correcthealth Lafourche, LLC ("Correcthealth") provided him with inadequate medical care while he was previously incarcerated in the Lafourche Parish Detention Center ("Lafourche"). He seeks an examination by an independent medical specialist and monetary damages. Record Doc. No. 1 (Complaint at ¶ IV and V).

In response to the court's orders, Record Doc. Nos. 4, 10, that plaintiff file a statement of facts and list all persons whom he contends violated his constitutional rights under the facts alleged in this lawsuit, Robichaux named Lafourche Warden Cantrell Davis, Assistant Warden Brent Naquin, Major Jeremy Granier and "Andrea," the head of the medical staff at Lafourche. Record Doc. No. 13 at ¶ 1. He attached copies of four Inmate Request forms that include Major Granier's responses. Id. at pp. 2-5.

On August 29, 2017, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Christopher James-Lomax, counsel for defendant. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

The day before the conference, Correcthealth filed a motion to dismiss plaintiff's claims for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). Record Doc. No. 19. As ordered, Record Doc. No. 20, Robichaux filed a response to defendant's motion. Record Doc. No. 25. He stated in his response that, after his recent release from prison, he was seen for complaints of pain at Ochsner Medical Center in Raceland, Louisiana, and was referred to an orthopedist in Houma, Louisiana for an MRI. Robichaux attached to his response two prescriptions written by a doctor at Ochsner Medical Center dated September 17, 2017, for ketorolac[1] tablets for pain and cyclobenzaprine[2] for muscle spasms. Record Doc. No. 25 at p. 3. He did not mention whether he has received or reviewed the medical records that the court previously ordered the two jails to provide to him. Record Doc. Nos. 5, 21. Plaintiff's testimony during the Spears hearing has also been considered in connection with defendant's motion.

---

[1]Ketorolac tablets are a nonsteroidal anti-inflammatory drug ("NSAID") used as a continuation treatment following ketorolac injection for the short-term treatment of pain. PDR.net (PDR, LLC 2017), http://www.pdr.net/pdr-consumer-monograph/ketorolac-tablets?druglabelid=1793&ConsumerId=1453 (last visited Oct. 3, 2017).

[2]Cyclobenzaprine is a medicine used along with rest and physical therapy to relieve muscle spasms associated with short-term, painful musculoskeletal conditions. Id., http://www.pdr.net/pdr-consumer-monograph/cyclobenzaprine?druglabelid=3089&ConsumerId=1179 (last visited Oct. 3, 2017).

Having considered the motion, the record as a whole and the applicable law, I recommend that defendant's motion should be GRANTED and this case DISMISSED WITH PREJUDICE for the following reasons.

### THE RECORD

On the day of the hearing, Robichaux testified that he was then incarcerated in Catahoula based upon a felony theft conviction on June 15, 2017, for which he was serving a two-year prison sentence. He confirmed that the claims he asserts in this case arise from his incarceration in Lafourche, where he was incarcerated after his arrest on November 24, 2016. He clarified that on February 24, 2017, the date of the Lafourche jail slip and fall incident on which his claims are based, he was being held as a pretrial detainee awaiting further proceedings on the theft charge.

Plaintiff testified that, on that date, he was in one of the showers in the Lafourche jail. He stated that the shower was a "brand new stainless steel shower," but it had no hand railing or non-slip floor treatment. He testified that, as he was leaving the shower, he slipped and "strained" himself as he caught his fall, injuring his left shoulder and arm.

Robichaux complained that Lafourche officials did not send him to the hospital after the fall because his injury "wasn't life-threatening and they didn't see no blood." He stated that he was seen on a television screen (apparently by videoconference) by a doctor located in Atlanta, who at first diagnosed his problem as arthritis. He complained that he received no treatment. He testified that, about a month later, he was given Tylenol twice a day for

pain until he was scheduled for x-rays, "which I had three of them at one time." He testified that the first medical care he received for his shoulder was with the doctor on a television screen, and that it was delayed about three or four months after the slip and fall incident.

Robichaux testified that he had not yet received a copy of his medical records, either as previously ordered by the court or as attachments to defendant's motion to dismiss. Record Doc. Nos. 5, 19. He could not confirm the accuracy of a particular record indicating that he was first seen by the doctor in a videoconference on April 6, 2017, about five or six weeks after the accident. Record Doc. No. 22. He confirmed that the doctor ordered x-rays, which he received, and an MRI, which he had not received.

Robichaux also confirmed the notation in his medical records that he was given Tylenol or ibuprofen initially for a period of three days and then later for additional three-day periods upon request, "probably pretty close" to through May 19, 2017, as indicated in the medical records. He confirmed that he had two x-ray sessions, once for three x-rays and the second time for six x-rays at the jail. He said he saw the doctor on the television screen "two or three times." He confirmed that the doctor did a range of motion test of his arm during one of the video conferences. He did not know the results of his x-rays, which a June 13, 2017, medical record states show that his left shoulder was "within normal limits." The record shows that the doctor ordered an MRI on that date, with a referral order to Chabert Medical Center ("Chabert") for the MRI to be conducted there.

Robichaux testified that he was <u>not</u> taken to Chabert for an MRI "because I got shipped" to Catahoula on June 17, 2017. The medical records indicate that his appointment for an MRI was sent to Catahoula with him, but he said he had not seen the order and had not yet received an MRI. He stated that a nurse at Catahoula told him that he was scheduled for an MRI, examination by an orthopedist and transfer to Hunt Correctional Center, but none of that had yet happened. "I'm over here with pain out of this world. I can't put my left arm behind my back . . . . I can't hold a tray of food or a cup with my left arm." Plaintiff complained that he has not received proper medical care either at Lafourche or Catahoula. He said he was scheduled to be released from jail next month.

On cross-examination, Robichaux repeated that he had received x-rays of his shoulder twice at Lafourche and also received Tylenol and ibuprofen and a doctor's examination via video conference. He complained that those things did not constitute proper treatment and that he was not sent to the emergency room when he fell. Plaintiff alleged that he should have received more treatment and should have been sent to Chabert for the ordered MRI. He stated that a nurse saw him at the Lafourche jail, but all she did was check his blood pressure.

Asked about an April 19, 2017 sick call request about pain in his arm and the medical record reflecting the response, he confirmed that a nurse had looked at his arm, but he denied that he could "exercise" his left arm or that the nurse provided treatment. He complained at length about the slippery conditions in the shower where he fell. Asked

about a May 19, 2017 request for care and complaint of pain, he disputed that he had denied any injury or trauma at that time, as noted in the medical record.

Robichaux stated that inmates Johnny Vedros and Emory Lasalle witnessed his slip and fall accident and that both Major Jeremy Granier and a Lafourche jail nurse were notified of the incident.   He complained that, in the past, Lafourche jail officials sent prisoners to the hospital emergency room when inmates were injured and that the current system of doctor examination by video conference "is not working; it didn't work for me." He alleged that "I should have been taken to a hospital" and that something more should have been done for him.  He said his arm was not in bad shape until he slipped and fell in the Lafourche jail shower.  He denied that he has arthritis, despite what the nurse at Lafourche noted in the records.

Robichaux testified that he never received any report of the results of his x-rays from jail officials.  He said he had to beg jail personnel who delivered his medication about the status of his MRI order.  He summarized that he was housed in a medical dorm in the Lafourche jail, that the accident was not his fault and that he did not receive the kind of medical treatment he should have received.  He stated that he continues to receive medication at Catahoula for his shoulder pain, including ibuprofen and steroids, and that a nurse and a doctor had examined him in person at Catahoula within about three weeks after he arrived there.

The verified medical records from Lafourche state that, after his slip and fall on February 24, 2017, plaintiff was seen by medical staff at the jail on February 26, March 11, March 13, March 18, and March 28, 2017, for problems such as a cold, sinusitis and followup of chronic hepatitis C virus. The records reflect no complaints of left shoulder pain or left arm problems at any of these visits. At his March 13, 2017 visit, Robichaux reported to Dr. Phillip Nowlin that he was "feeling fine but . . . having some muscle aches all over." Dr. Nowlin's examination notes contain no abnormal findings. Record Doc. No. 22 at p. 20. Plaintiff received acetaminophen[3] at each of these visits.

The first medical record notation of any complaint of left arm and leg pain and weakness was on April 3, 2017, when Robichaux was seen by a nurse, who noted that plaintiff was in no acute distress and had equal strength and range of motion. Record Doc. No. 22 at p. 91. Plaintiff received ibuprofen[4] twice a day for six days. Id. at pp. 67-68. He saw a nurse again on April 6, 2017. Robichaux reported a gradual onset of left shoulder pain for one month. He had limited range of motion. He was given ibuprofen three times a day for three days. Id. at pp. 37-38, 86.

---

[3]Acetaminophen is a pain reliever and fever reducer used to treat conditions such as headache, muscle aches, arthritis, backache, toothaches, colds and fevers. Drugs.com (Cerner Multum, Inc. 2017), https://www.drugs.com/acetaminophen.html (last visited Sept. 18, 2017).

[4]Ibuprofen is an NSAID used to reduce fever and treat pain or inflammation caused by conditions such as headache, back pain, arthritis or minor injury. Id., https://www.drugs.com/ibuprofen.html (last visited Sept. 18, 2017).

Plaintiff saw Dr. Nowlin on April 11, 2017, for complaints of multiple joint aches and pain in the neck, arm and lower back.  Dr. Nowlin noted that plaintiff's physical examination was normal, he was in no acute distress and he had a long history of arthritis. Dr. Nowlin's impression was arthralgia,[5] for which he prescribed Tylenol (acetaminophen). Id. at pp. 22, 86.

In the early morning hours of April 19, 2017, plaintiff complained of chest pains until he arrived in the medical department, when he denied chest pains and complained of left shoulder pain, numbness, difficulty using his left arm and that the arm was smaller than his right arm.  The nurse noted that he was already receiving Tylenol and instructed him to exercise his left arm to prevent muscle atrophy.  Id. at p. 92.

Plaintiff continued to receive acetaminophen twice daily through May 21, 2017, when Aleve[6] twice daily was added to his acetaminophen, both of which continued through May 26, 2017.  Id. at pp. 68-71.  He continued to receive acetaminophen thereafter through June 16, 2017.  From June 4 through 16, 2017, he also received a medication called "All Day Relief" in the same dosages as he had previously received Aleve.  (Tr. 71-74.)

On May 19, 2017, Robichaux complained of left arm pain, but "[d]enies any injury or trauma."  On examination, he was in no acute distress, but had limited range of motion.

---

[5]Arthralgia is pain in a joint.  Stedmans Medical Dictionary (Thomson Reuters 2017) (on Westlaw at Stedmans Medical Dictionary 75390) (last visited Sept. 18, 2017).

[6]Aleve (naproxen) is an NSAID that is used to reduce fever and to relieve minor aches and pains due to arthritis, muscular aches, backache, headache, toothache and the common cold.  Drugs.com, https://www.drugs.com/aleve.html (last visited Sept. 19, 2017).

He was instructed to use the arm to prevent atrophy.  He was already receiving Tylenol.  Id. at p. 92.  An x-ray was taken of his left shoulder on the same date.  Id. at p. 87.

Dr. Nowlin examined Robichaux and reviewed his left shoulder x-ray on June 6, 2017.  Plaintiff stated that he had hurt his left hand when he slipped in the shower on February 24, 2017, and had been having muscle weakness and trouble lifting that arm.  He also complained of right arm pain.  Physical examination revealed a decreased range of motion and pain with elevation of the left arm, but no neurological deficits.  Dr. Nowlin ordered x-rays of plaintiff's neck and left arm, which were taken the same day, and planned to obtain a right arm x-ray.  Id. at pp. 23-24, 89.

Robichaux returned to see Dr. Nowlin on June 13, 2017.  Dr. Nowlin noted that plaintiff "appears well" and that his left shoulder x-ray was normal.  The doctor's impression was left shoulder pain and decreased activity.  He ordered an MRI of plaintiff's left shoulder.  Id. at pp. 24, 90.  On June 15, 2017, when scheduling the MRI at Chabert, a nurse at Lafourche noted that Robichaux had shoulder pain of unknown origin with negative x-rays.  Id. at p. 26.  An MRI was scheduled for June 29, 2017.  When plaintiff was sent to Catahoula, his scheduled MRI appointment was sent as well.  Id. at p. 92.

The verified medical records from Catahoula show that a left rotator cuff[7] problem was noted during Robichaux's initial screening on June 19, 2017.  Record Doc. No. 23.[8] The Catahoula records reflect that plaintiff previously had a cervical spine x-ray on June 9 and x-rays of his left shoulder on May 19 and June 12, 2017, all of which were negative.

Robichaux saw a doctor at Catahoula on June 29, 2017, for a complaint of left shoulder pain.  On physical examination, he had decreased range of motion, decreased strength, and tenderness in his shoulder joint.  The doctor's impression was "left shoulder pain (rotator cuff??)."  The doctor prescribed an oral steroid for one week and ibuprofen for three months and ordered plaintiff's MRI to be rescheduled.

On July 27, 2017, Robichaux was seen for followup of left shoulder strain, suspected rotator cuff tear, which he reported injuring at Lafourche.  The doctor noted that plaintiff had shown no improvement after taking a steroid and that he had decreased range of motion in his left shoulder, tenderness to palpation of the shoulder joint and decreased grip strength.  The doctor's impression was GERD (gastroesophageal reflux disease) and rotator cuff tear, for which plaintiff received a prescription for a muscle relaxer for three months.

---

[7]The rotator cuff consists of of muscles and tendons in the shoulder.  Common problems with the rotator cuff "include tendinitis, bursitis, and injuries such as tears.  Rotator cuff tendons can become inflamed from frequent use or aging.  Sometimes they are injured from a fall on an outstretched hand." NIH: National Institute of Arthritis and Musculoskeletal and Skin Disease (U.S. National Library of Medicine 2016), https://medlineplus.gov/rotatorcuffinjuries.html (last visited Sept. 19, 2017).

[8]The medical records from Catahoula are not paginated.

The doctor ordered a referral to an orthopedic clinic and Robichaux's transfer to Elayn

Hunt Correctional Center ("Hunt").

On August 22, 2017, Catahoula medical staff requested that plaintiff be transferred

to Hunt because of his chronic left shoulder pain, left rotator cuff tear and GERD.  On

September 6, 2017, Robichaux requested and received an increase in his ibuprofen dosage

from 600 to 800 milligrams.

## ANALYSIS

I.    STANDARDS OF REVIEW

The current procedural posture of this case requires the court to apply two different

but closely related legal standards to evaluate plaintiff's claims.  First, Rule 12(b)(6)

standards apply to Correcthealth's motion to dismiss.  Second, the court applies the well-

established screening standards emanating from 28 U.S.C. § 1915 to determine if

Robichaux's claims involving his medical care are legally frivolous or state a cognizable

Section 1983 claim.

(A)    MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for failure to

state a claim upon which relief may be granted.  The Supreme Court recently clarified the

standard for a motion to dismiss under Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim to relief that is plausible on its
> face.'"  A claim for relief is plausible on its face "when the plaintiff pleads
> factual content that allows the court to draw the reasonable inference that the

11

defendant is liable for the misconduct alleged."   A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544 (2007))).

"The Supreme Court's decisions in Iqbal and Twombly . . . did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a court must 'accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff.'" Id. at 803 n.44 (quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)) (internal quotation omitted).

The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments. Walch v. Adjutant Gen.'s Dep't, 533 F.3d 289, 293 (5th Cir. 2008). Defendant's motion addresses only the sufficiency of the allegations of the complaint as a matter of law, not whether the allegations are true.  Thus, for purposes of the motion, the court accepts "'all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs.'" Jabary v. City of Allen, No. 12-41054, 2013 WL 6153241, at *3 (5th Cir. Nov. 25, 2013) (quoting Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)).  "With respect to any well-pleaded allegations 'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 664).

(B)    SCREENING STANDARDS

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly

baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994)
(quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a
pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis
of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an
opportunity to verbalize his complaints, in a manner of communication more comfortable
to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an
evidentiary hearing is in the nature of an amended complaint or a more definite statement
under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991);
Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual
nature of the complaint, it may also appear that no justiciable basis for a federal claim
exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing,
Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d
318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S.
25 (1992)), and may consider and rely upon documents as additional evidence, as long as
they are properly identified, authentic and reliable. "The Court should allow proper cross-
examination and should require that the parties properly identify and authenticate
documents. A defendant may not use medical records to refute a plaintiff's testimony at
a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121,

124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, Correcthealth's motion should be granted and plaintiff's Section 1983 complaint should be dismissed in its entirety under 28 U.S.C. § 1915(e)(2) and 42 U.S.C.

§ 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under

Rule 12(b)(6). Plaintiff's complaint fails to state a cognizable claim of violation of his

constitutional rights, even under the broadest reading.[9]

II.    EVALUATION OF PLAINTIFF'S CLAIMS

(A)    State Actor/No Respondeat Superior Liability

Correcthealth concedes in its motion to dismiss that it is a state actor for purposes

of plaintiff's constitutional claims against it. See Bishop v. Karney, 408 F. App'x 846, 848

(5th Cir. 2011) (citing West v. Atkins, 487 U.S. 42, 49-50, 54-57 (1988)) ("A private doctor

under contract with a state prison to provide medical care to prisoners is considered a state

actor because his action in providing medical care to prisoners is fairly attributable to the

state."); Stone v. Gusman, No. 16-1321, 2017 WL 3037632, at *2–3 (E.D. La. June 21,

2017), report & recommendation adopted, 2017 WL 3034362 (E.D. La. July 18, 2017)

(citing Shadrick v. Hopkins Cnty., 805 F.3d 724, 736 (6th Cir. 2015); Whittington v.

Normand, No. 16-1702, 2016 WL 8213259, at *2 (E.D. La. Sept. 14, 2016), report &

recommendation adopted, 2017 WL 497802 (E.D. La. Feb. 7, 2017); Grandpre v. Correct

Health, No. 16-1543, 2016 WL 4539442, at *8 (E.D. La. Aug. 29, 2016), report &

recommendation adopted sub nom. Grandpre v. Health, 2016 WL 4987265 (E.D. La.

---

[9]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Sept. 19, 2016)) ("a private corporation contracted to operate the medical services within a parish jail is subject to liability as a state actor under § 1983").

However, Correcthealth argues that the claim against it should be dismissed because plaintiff is attempting to hold the corporation liable for the alleged actions or inactions of its employees based on a theory of respondeat superior. Robichaux makes no claim that any particular individual defendant was personally involved in any of the alleged acts or omissions upon which his claims of constitutional violations are based. Regardless, "[t]here is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corr. Corp. of Am. Inc., 364 F. App'x 927, 929 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, Correcthealth cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in its employ or under its supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983). "[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, so is a private corporation not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." Alfred v. Corr. Corp., No. 08-CV-0643, 2009 WL 789649, at *2 (W.D. La. Mar. 24, 2009) (citing Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir. 2003)).

To recover against a corporation like Correcthealth under Section 1983, plaintiff must show that the deprivation of a constitutional right was pursuant to a custom, policy, ordinance, regulation or decision. "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." Id. at n.1 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Phillips v. Corr. Corp., No. 02-766, 2006 WL 1308142, at *3 (W.D. La. May 10, 2006)).

A municipality or corporation may be held liable for the actions of its employees only if the municipality or corporation, through an official policymaker, implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell, 436 U.S. at 691-95; Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 436 (5th Cir. 2008).

> It is well established that governmental liability under § 1983 must be premised on a government policy or custom that causes the alleged constitutional deprivation. A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.

Id. (citing Monell, 436 U.S. at 694; Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003)).

Thus, municipal or corporate "liability under section 1983 requires proof of three elements:  a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted); accord Duvall v. Dallas Cnty., 631 F.3d 203, 209 (5th Cir. 2011).  "However, [i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." Gates, 537 F.3d at 437 (quotation omitted) (emphasis added).

In the instant case, Robichaux "has alleged no facts that would support an inference that the [Correcthealth employees] acted pursuant to a policy or custom." Floyd v. City of Kenner, 351 F. App'x 890, 900 (5th Cir. 2009) (citing Gates, 537 F.3d at 436).  At most, plaintiff has alleged isolated instances in which the medical staff at the jail failed to treat him as promptly as or with the type of treatment that he prefers.  Robichaux has made only vague and conclusory allegations that the actions of these employees were constitutional violations, and his complaint and testimony are "devoid of any allegations that an official policy or custom of [Correcthealth] was the 'moving force' behind its employees' alleged deprivation of Plaintiff's civil rights."  Alfred, 2009 WL 789649, at *2.  In these circumstances, Robichaux's complaint against Correcthealth must be dismissed.  Floyd, 351 F. App'x at 900 (citing Gates, 537 F.3d at 436).

(B)    Medical Care

At the relevant times about which he complains, Robichaux was a pretrial detainee until he was convicted on June 15, 2017. He was then a convicted inmate at Lafourche for two days until he was transferred to Catahoula on June 17, 2017. In his complaint, plaintiff alleges that defendant refused to provide him with any medical examination by a doctor or by an independent medical specialist after he sustained a shoulder injury. Record Doc. No. 1. In his statement of facts, Record Doc. No. 13, Robichaux admits that he was seen by a doctor after he notified the Lafourche medical department of his injury and that he had x-rays taken of his left shoulder, but he seems to allege that the MRI that was ordered on June 13 and scheduled for June 29, 2017, should have been performed before he was transferred to Catahoula. In his testimony, plaintiff complained that Lafourche jail officials did not send him to the hospital after his fall, that he received no treatment because he was seen only by a doctor in Atlanta on a television screen, and that the videoconference visit was delayed for three or four months after his slip and fall incident.

Although Robichaux's complaint did not identify any individual healthcare providers as defendants, he alleged in his testimony that medical staff members at Lafourche failed to give him appropriate treatment. In his statement of facts, he named "Andrea," the head of the medical staff at Lafourche, as a person who violated his constitutional rights. Even if plaintiff received leave to amend his complaint to name individual healthcare providers as defendants, the amendment would be futile, Fed. R. Civ.

20

P. 15(a)(2); <u>Stripling v. Jordan Prod. Co.</u>, 234 F.3d 863, 873 (5th Cir. 2000); <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 139 (5th Cir. 1993), because his complaint, as amended by his statement of facts and his <u>Spears</u> hearing testimony, fails to state a claim for deliberate indifference to his serious medical needs.

Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of

22

serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials

23

'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'" <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009) (quoting <u>Domino v. Tex. Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has reaffirmed that "deliberate indifference"
>
> is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770.  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue.  <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies and Robichaux must allege facts sufficient to establish that a defendant (if plaintiff had named any individual defendants) knew he faced a substantial

risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions that Robichaux described regarding his left arm and shoulder constituted serious medical needs that posed a substantial risk of harm in his particular circumstances. The record indicates that his left arm and shoulder condition presented no immediate medical emergency. He testified that he injured his shoulder on February 24, 2017. However, neither the two Inmate Request forms that plaintiff submitted to the court that are dated before June 6, 2017 (on April 12 and May 24, 2017, Record Doc. No. 13 at pp. 2-5) nor the verified medical records show that he reported the slip and fall incident before June 6, 2017, when he advised Dr. Nowlin of it. Robichaux submitted another Inmate Request form on June 7, 2017, asking that he be taken to the emergency room because of the slip and fall on February 24, 2017, to which a jail official (presumably Major Granier) responded the next day that he had met with the medical staff, who had reviewed plaintiff's x-rays and could not find anything physically wrong with his shoulder, but that Robichaux was receiving medication by his doctor and would not be sent to the emergency room. Record Doc. No. 13 at p. 4.

The medical records show that Robichaux did not complain of pain in his left arm or shoulder until April 3, 2017, and did not mention any slip and fall injury to medical staff

until June 6, 2017. Once he began to complain of pain, plaintiff had multiple examinations by Dr. Nowlin and nurses at the jail, x-rays were taken of his left shoulder and he received daily doses of acetaminophen, ibuprofen, Aleve and "All Day Relief," either alone or in combination. When Robichaux told Dr. Nowlin on June 6, 2017, that he had been injured in a slip and fall in February, the doctor immediately ordered x-rays of plaintiff's neck and left arm and ordered an MRI a week later, which was scheduled but did not occur because plaintiff was transferred to Catahoula. Multiple examinations by doctors and nurses and multiple x-rays failed to reveal any serious or long-lasting condition in Robichaux's left arm, shoulder or neck.

As the Lafourche medical records establish, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Burley v. Upton, 257 F. App'x 207, 210 (11th Cir. 2007) (back pain not a serious medical need because "it was not so serious that if left unattended, [it] pose[d] a substantial risk of serious harm"); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, complained of pain in his hip and was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate

indifference when he was seen by medical personnel "numerous times for problems relating to his hip"); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) ("swollen wrists with some bleeding" not a serious medical need); <u>Dickson v. Colman</u>, 569 F.2d 1310, 1311 (5th Cir. 1978) (inmate with full range of motion in shoulder despite continuing pain from old injury did not have serious medical need); <u>Claudet v. Jones</u>, No. 10-87, 2010 WL 4365512, at *4 (E.D. La. Oct. 27, 2010) (back, neck, shoulder and chest pain and high blood pressure not serious medical needs); <u>Lusk v. Dallas Cnty. Sheriff's Dep't</u>, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (herniated disc and degenerative spinal disease not serious medical needs); <u>Nelson v. Rodas</u>, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (back spasms and pain not serious medical needs); <u>Solomon v. Moore</u>, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (plaintiff who could walk and function normally despite neck, back and groin pain had no serious medical needs).

Nonetheless, although a torn rotator cuff (if Robichaux indeed has a torn rotator cuff, which has not been confirmed by any objective test in the record) does not automatically present a serious medical need for purposes of constitutional analysis, Correcthealth does <u>not</u> argue that Robichaux's shoulder condition is not a serious medical need. Several district courts have held that a torn rotator cuff at least arguably presents a serious medical need. <u>E.g.</u>, <u>Gilchrist v. Joshua</u>, No. 3:17-CV-0494-LAB-MDD, 2017 WL 2123640, at *2-3 (S.D. Cal. May 16, 2017); <u>Mann v. Shah</u>, No. 17-CV-336-NJR, 2017 WL 2116684, at *3

(S.D. Ill. May 15, 2017); Bailey v. Santiago, No. 4:15CV630-WS/CAS, 2017 WL 2471055, at *4 (N.D. Fla. May 3, 2017), report & recommendation adopted, No. 4:15CV630-WS/CAS, 2017 WL 2468800 (N.D. Fla. June 6, 2017); Ibarra v. Zamora, No. 117CV00144MJSPC, 2017 WL 1375190, at *3 (E.D. Cal. Apr. 17, 2017); Matthews v. Fleming, No. 3:05-CV-1408-L, 2009 WL 1726234, at *4 (N.D. Tex. June 18, 2009). Viewing Robichaux's factual allegations in the light most favorable to him, as the court must when considering a motion to dismiss, the court assumes that his condition presents a serious medical need.

Even assuming, however, but without concluding that his shoulder or arm condition presented a serious medical need for constitutional purposes, plaintiff has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and his statement of facts and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in Lafourche.

Robichaux testified and his medical records confirm that he was seen by doctors and nurses and that his conditions were treated with physical examinations, objective testing and medication. His testimony and medical records confirm that his conditions were monitored and addressed by medical personnel during his stay in Lafourche, and that those professionals exercised their medical judgment regarding his need, or lack of need, for treatment.

Plaintiff alleges that he received <u>no</u> treatment for his slip and fall injury to his left arm and shoulder, but the medical records <u>and</u> his further testimony reflect that he was seen by medical staff many times after February 24, 2017 and did not complain of left arm and shoulder pain until April 3 and did not report any injury as a result of a slip and fall until June 6, 2017. After he reported left arm and shoulder pain, he was twice examined by a nurse and he received medications for pain and inflammation until he was transferred to Catahoula. He also saw Dr. Nowlin on April 11, 2017 for complaints of multiple joint aches and pain in the neck, arm and lower back. The doctor diagnosed arthralgia (which means joint pain) and prescribed Tylenol based on plaintiff's physical examination and history, which at that time did <u>not</u> include any reported slip and fall. At plaintiff's next visit on May 19, 2017, when he complained of left arm pain specifically, Dr. Nowlin ordered an x-ray of his shoulder and continued his pain medication. When Robichaux told the doctor on June 6, 2017 about his slip and fall months earlier, Dr. Nowlin ordered x-rays of plaintiff's neck and left arm. All of the x-rays were negative. At a visit on June 13, 2017, Dr. Nowlin ordered an MRI of plaintiff's left shoulder. These multiple medical consultations, tests and medication prescriptions are <u>not</u> "no treatment" and do not support a claim of deliberate indifference. <u>See</u> <u>Harris v. Epps</u>, 523 F. App'x 275, 275 (5th Cir. 2013) (citing <u>Domino</u>, 239 F.3d at 756; <u>Banuelos</u>, 41 F.3d at 235) (When inmate received tests and regular examinations for hepatitis C and a back problem, "his claim amounts to a disagreement with the treatment and a desire for more. That is not enough for a viable

claim of deliberate indifference."); <u>Lathers v. Nelson Coleman Corr. Ctr.</u>, No. 10-128 D1,

2010 WL 1489903, at *10 (E.D. La. Mar. 22, 2010), <u>report & recommendation adopted</u>,

2010 WL 1485468 (E.D. La. Apr. 13, 2010) (Inmate "was not <u>denied</u> treatment; on the

contrary, x-rays were taken and no injury was found. . . .  [The C]onstitution does not

require that a prisoner be sent to sent to a hospital for additional care or treatment when

medical tests indicate that no such additional treatment is necessary."); <u>Estes v. Bowers</u>,

No. 3-00-CV-1203-BD, 2002 WL 628755, at *2, 3 (N.D. Tex. Apr. 17, 2002), <u>aff'd</u>, 73 F.

App'x 747, 2003 WL 22013460 (5th Cir. 2003) (To the extent that plaintiff argued "that

Motrin therapy was not the appropriate course of treatment for his back pain, he has failed

to state a constitutional violation."  A nine-day delay in x-raying a fractured rib and a

failure to prescribe medications for the fracture, in addition to the ibuprofen that plaintiff

was already taking, were <u>not</u> deliberate indifference.).

 Although Robichaux has alleged delay in receiving medical care in that he did not

receive the treatment he thought was necessary quickly enough, and he has expressed

dissatisfaction with the overall speed, quality and effectiveness of treatment, none of his

allegations rise to the level of deliberate indifference necessary to establish a constitutional

violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example
> of a matter for <u>medical judgment</u>.  A showing of deliberate indifference
> requires the prisoner to submit evidence that prison officials refused to treat
> him, ignored his complaints, intentionally treated him incorrectly, or engaged
> in any similar conduct that would clearly evince a wanton disregard for any

serious medical needs.  Deliberate indifference is an extremely high standard
to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis

added).  No such showing has been made on the current record.  In Robichaux's case, the

decisions of Dr. Nowlin and the jail nurses not to provide him with additional treatment for

alleged conditions that they found were medically unsupported were classic examples of

the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for

a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation.  Easter

v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson, 910 F.2d

at 284.  Regardless of the length of delay, plaintiff at a minimum must show deliberate

indifference to serious medical needs.  Wilson, 501 U.S. at 298.  No such showing can be

made in this case in light of the continuing medical attention Robichaux received for his

complaints of pain and injury during his incarceration at Lafourche.

Contentions like Robichaux's that amount to a mere disagreement with the speed,

quality or extent of medical treatment or even negligence do not give rise to a Section 1983

claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level

of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy,

174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious

medical condition, which ultimately resulted in death, does not constitute deliberate

indifference, even if treatment was negligently administered); see also Estelle, 429 U.S. at

107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice . . . .") (emphasis added); Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. May 18, 1994)) (Contrary to plaintiff's allegation that he received "no treatment" because he believed he needed referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference); Lathers, 2010 WL 1489903, at *10 n.12 (citing Domino, 239 F.3d at 756; Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999)) (additional citations omitted) ("Even if it could ultimately be shown that the jail medical staff erred in diagnosing the existence or extent of plaintiff's injury, his federal claim would still fail. . . . [A]n incorrect diagnosis simply does not suffice to state a claim for deliberate

indifference."); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state claim for deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. His complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that the motion of defendant Correcthealth Jefferson, LLC to dismiss plaintiff's claims against it, Record Doc. No. 19, be GRANTED, and that plaintiff's Section 1983 complaint against Correcthealth Jefferson, LLC be **DISMISSED WITH PREJUDICE** for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[10]

New Orleans, Louisiana, this ___10th___ day of October, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.